Okay, so I just need you to sound check because I don't think we can hear you. Good morning, Your Honors. Can you hear me? Oh, no, we can't. Yep. Thank you very much. All right. And, Counsel, can you hear and see Opposing Counsel? Yes. Yes, ma'am. And you've got the screen over there. Okay. In that case, we're ready to hear your argument when we're ready to present. Good morning, Your Honors. Nicolette Glazer, appearing on behalf of the Plaintiff Appellants. May I reserve five minutes of my time for a bottle? Certainly may, but please keep track of your own time on the clock. Yes. Before this court is a case of a first impression, an interpretation of a brand-new statute passed to alleviate a great economic harm during a pandemic, a deadly pandemic. Applying the novel review, we ask this court to reverse and re-mantle this report for further proceedings. When construing a statute, a court must start with its text. The reason for that is simple. Legislatures express their purpose through the word they enact into law. Notion of administrative deference must not stretch federally enacted statute to reach places that Congress did not intend or imagine it will be interpreted. Blind deference includes mischief from administrative agencies because of the expectation that post-hoc racialization will be accepted. This is what led the district court astray. A determination and decision in this case required the court to examine three separate federal statutes, the CARES Act, the Small Business Act, and the Immigration and Nationality Act. In enacting the CARES Act, Congress did not define eligibility for emergency ID alone by the immigration status of their incorporators or shareholders. But Congress spoke directly on the issue, on the related relief in the statute, when it decided that child tax credit can only be granted to non-residents if they have a social security number. Now that is relevant, Your Honor, because Title 42, Section 405, defines how and who can get a social security number. And that is non-citizens who are either employment authorized, in special care status, or are granted forward permits. So Congress in the CARES Act did not relate to qualified aliens, and I'm using the term as is defined in the INA, or to the status of the individual by specific immigrant or non-immigrant status, but expanded a category that is not present in PRIORA. If the court will look at Article 1641, you will see that the definition of qualified alien is entirely based on an immigration status, not at all based on their employment authorization. So the agency was not free to disregard what Congress put in the CARES Act. Equally, the Small Business Act, the act that they are authorized and empowered to... Counsel, under your interpretation, under the CARES Act, is there anything that prevents the SBA from providing the benefit to a foreign company outside the United States? Yes, Your Honor. I believe it is clear that the entity, the eligible entity, must be in the United States. And under what provision of the CARES Act does it say that? Well, Your Honor, it goes into the, it is an extension of the Small Business Act, and Small Business Act specifically states that a concern, a small business concern must be in the United States. Right. So you are conceding that the CARES Act is implemented in the background rules and legislation that was provided by Congress previously. So why not PRIORA? I don't know how you say that statute, but that's how I've been saying it. I don't know either, Your Honor. What I wanted to say about PRIORA is that PRIORA is not part of the Small Business Act. It is part of the INA. But the question is PRIORA has never been applied to corporations, first. And second, never been applied, part of the INA, or the Immigration Nationality Act, had never been applied to foreign, to United States corporations. What we have here, Your Honor, is... There was an issue raised below. Yes, Your Honor. Whether or not PRIORA applies to corporations. Yes. Yes, specifically raised, the government did not address, and the district court did not address that. Yeah, let me just ask that again, because it was extensively raised by you. But I don't read the district court opinion to address it at all. He did not, Your Honor. And the government also did not respond to that argument. Are you making a motion to reconsider? We have not filed. But it seems that the judge was pretty set in the way he saw the case, so we didn't do that, Your Honor. Perhaps it was... In the trial court, it looked like there's a little bit of a confusion under a heading that's labeled as a constitutional claim. Can you tell me how does this become a constitutional claim? Well, Your Honor, what we argued in that particular case is that a corporation has the right to a notice and opportunity to be heard. And then a corporation and anybody applied for that were never given an opportunity or an idea why they will be denied, because this particular rule that we challenged was never publicized. It actually did not get put into the public record after we filed the lawsuit. And so there was never an opportunity for an applicant to overcome this blanket, unverified denial that they sent people saying, well, something in the application raises concern about the veracity. I mean, that sounds pretty nefarious. And my clients interpreted there was some sort of a concern about that they have committed something inappropriate. So if in fact, although not in the administrative record, if they had had that rule before your clients applied, so in an SOP of 2015, would that adjust your position? No, Your Honor, because again, the court must look at what the rule are we challenging. The rule is in paragraph 103. And it says that only people who are eligible for, only companies that are eligible for ADL loans, if they're shareholder incorporated, are U.S. citizens, legal permanent residents, or have a receipt for an approved adjustment of status or 751, the 790 CRC. Those are the four categories put in the rule. Nowhere does it mention qualified alien. In our applying table two, we actually put the actual rule that was implemented with 1641 and 1611. And as the court will see that neither refugee, asylee, people who have parole with more than one year of validity, a certain Haitian and Cuban entrant under IRCA, nor people who are granted status under VAWA or trafficking were included. So these people would be qualified alien, but the rule that they're applied would have excluded their company. So again, if this rule is in existence, it was never in existence before the 2020 SOP, which is Exhibit B to our motion for position notice, that is what is the problem. In the previous practice, the agent has swayed back and forth for certain issue, and we put them in our Exhibit Table 1. And it was not until 2019, the first time that the agency grouped corporation with partnership and sole proprietorship. And we will admit that a sole proprietor or a partnership would properly be asked the question of incorporator because technically it flows to the individual. And the individual... Can I return you to the question I had earlier about Perora? I thought your argument was that Perora didn't even apply. And that CARES Act doesn't incorporate it. But now you're saying Perora does apply, but it doesn't apply to corporations. Is that right? Well, what we said in the beginning is that Perora could not apply in the context of corporations. Well, I guess that's my problem. I don't think I saw that in your opening brief. I thought that the argument in the opening brief is that Perora just doesn't apply at all. I believe that's the case because Perora has never been applied to corporations. Was that argument made in your opening brief? Your Honor, I believe that we responded to that because that was the only argument raised by the respondents. But I have to check, Your Honor. I'm not sure. That seems like it might be weighed if it's not in the opening brief. So if you want to double check at some point. I will check, Your Honor. But again, the question in the lower court actually did not address the issue at all. It did not address whether the Immigration and Nationality Act applied to corporations. That is specifically raised, and that was specifically raised in the opening brief. And that is the starting point. Well, not in our opening brief. In our opening brief, we specifically raised the issue that the Immigration and Nationality Act... In the district court. In the district court, and I can get the specific consultation. We specifically argued, we argued also the case law and that there is a settled precedent that neither an agency or a court can disregard the corporate formation. This is a pure question of law. It's a question of statutory interpretation. And it unequivocally was raised below in the district court. Yes, Your Honor. And then it's fully engaged by the government  And then you respond in the reply brief. I did, Your Honor. Can you think of any case in the Ninth Circuit where that wouldn't be considered an issue of law that was preserved for us to decide? Your Honor, I believe my... And again, my research has indicated that in the Ninth Circuit, issue of statutory interpretation is reviewed by this court and there is no deference... Has the government urged that you waive this?  I don't believe so, Your Honor. Well, wasn't it only raised in the reply brief? Your Honor, we specifically... I mean, I will go back to my appeal and I will submit a specific pinpoint recitation. But we... Yeah, that would be helpful. If it's in your opening brief, that would be helpful for me. I will certainly look into it when I take the time to reply. But also, I will submit it to the court and if I am incorrect, I will submit it in a notice to the court. But my recollection in preparation today was specifically argued that corporate information cannot be disregarded and that the INA does not apply to corporations. Are you going to... Stick with it. It's a fascinating issue and it's very, very consequential. As you know, I'm not from here. I'm from the Fifth Circuit, so hurricanes come through frequently. We have a lot of U.S. companies that employ U.S. citizens that are licensed in good standing and pay taxes and yet hurricanes hit. So the consequence of the government's argument, as I would read it, would be that none of these employers of U.S. citizens paying taxes are eligible. So it's an extraordinarily important issue of law. That said, you do have another plaintiff and the district court dismissed as the stam purely outstanding. So I'm really interested in whether Ninth Circuit law would justify the district court's ruling. I see that the district court didn't cite any law as to that, but there is quite a bit of law. Well, Your Honor, I will start, if I may, very quickly with Supreme Court's law and Supreme Court's precedent. And I believe the problem with the district court's ruling on standing is threefold. First, it is well settled that one plaintiff in a multi-party lawsuit requires to have standing. On the motion to dismiss stage, the judge found that the common carrier has standing as to all their claim. Second, it is well settled that the court cannot use merits determination for purposes of standing. So here the judge found that the rule that we are challenging does not exist. That is the quintessential merits question. It is not a standing issue. In fact, for purposes of standing, I believe the Supreme Court in the last pronouncement, that is the Ted Cruz case, said we have to accept that the plaintiff will prevail for purposes of standing. So here the district court not only has to accept that this rule applies, but the applicant was subjected to that rule. And the third one issue is that we believe is relevant here for purposes of standing is that the main argument of the district court is that the stamp company was given an opportunity to reopen their book of litigation. That happened during the litigation. And I believe the Ted Cruz case that came this term, I believe, specifically rejected the specific argument that was raised by the government below that self-inflicted injury somehow eliminates standing. And I believe these three arguments that are supported by Supreme Court's decision, Weldon, Ted Cruz, and I believe the merits one is against Standon. And I believe it is having relatively... My issue with standing was the traceability front. It seems like the reason why your stamp application was denied because it didn't follow up on that email that said, you know, go ahead and follow up. And so how is this traceable to the no amendment policy? Your Honor, if you look at the complaint, before this email was sent, the day before, the government has already denied that stamp application. But still it's saying you should go ahead and follow through and amend it. And then the stamp didn't do that. And that's why it was denied. Well, actually, I have to disagree, Your Honor. What we have here is an effort by the subcontractor, the people who are on the phone, to try to input the information. That information never got put into the system because of the mandatory rules. So there's no ability to amend. The only thing after that, they did open up a possibility for people to seek formal reconsideration. That happened, I believe, in 2021. And so... What about the email to Stan that said, I forget exactly what it said, but doesn't it say, go ahead and go back and look at your application again and re-input information? It said, go ahead and re-input the screenshot. It still said denied. But isn't it fairly characterized as an invitation for your boss? It is an invitation, but that's not... In Mr. Ted Cruz's case, the Supreme Court kind of made that distinction, is that the fact that you were given another alternative does not prevent an individual who's challenging a rule to continue to challenge that rule. That's not another alternative in the sense of, you know, a different approach. It's a do-over. It's an invited do-over. And your position is that still shows injury? Well, but that was done during the litigation. And they never reopened it. They could have reopened it and then we were standing absolutely... But I thought that email was in the complaint, so it's prior to the litigation. That email, Your Honor, I believe was issued after the denial. I believe it's July 16, and on July 15 is the date of the decision. Yeah, as I saw it, looking at your complaint, that is correct. Chronologically, you get the denial after that email comes. But also, as I read your complaint, at paragraph 130, even after that, July 31st, at least your allegation is, your allegation, whether it's plausible or not, your allegation is that you reached SBA agent Nancy, last name unknown, who confirmed the application had been withdrawn and that no option to reopen or reactivate exists. That is correct, Your Honor. So you allege that even after this allegation, please do it again, after four other people have said do it again, you allege that you were told you can't reopen it. That is correct, Your Honor. This is different. Forgive me, but this is quite different. So you're relying on the assertion of fact now that despite what I'm characterizing as an invitation, that in fact there was a subsequent statement, rescinding that invitation as opposed to the Ted Cruz case where you said you think as a matter of law this is still an injury. Let me just make a short cut to that. Your Honor, I apologize. I forgot that there was the Nancy, last name unknown, allegation in the complaint. And that is correct. I think that after the denial, they will continue to try to Okay. So yeah, I'm going to take that as a yes, that you're relying on the factual allegation in your complaint as opposed to the legal one. Yes? I think of both probably. I mean, I think the factual issue is relevant because it was a motion to dismiss. Very relevant if I disagree with you on the legal proposition. It sounds like, because it seems to me that an invitation to come back for a do-over would pretty much dispose of your legal argument. But if you're saying that there was an actual assertion that notwithstanding the invitation, that there still wasn't going to be an avenue for relief, that's quite different. So I take your point. I'm going to move on. Well, I'd love to clarify that. Because as I see it, the district court just simply said, you didn't trace it. And your response to that would be paragraph 130, we allege that we didn't. It'll be proven. Was it an administrative mess-up or was it in no amendment policy? But then Ted Cruz, which the district court couldn't have considered and the government hasn't had an opportunity to speak to, is the response to the government's separate argument, which is not, as I understand it, embracing the district court's theory. The government's instead saying, oh no, self-inflicted. And at that point, you would have to, someone, it's maybe not us, and the first instance the district court never addressed Ted Cruz, would have to decide, oh, was a causal gene that was alleged, was it broken? That's a totally separate theory. There's been no exploration by that. It certainly wasn't why your client was dismissed. That is correct, Your Honor. Yeah. I absolutely agree with that, Your Honor. And one last thing I want to point is that if this was motioned to dismiss as the Supreme Court in Bennett's case, did Bennett qualify, the traceability at that level is a fairly modest one. And I believe that is the exact quote. So for purpose of a dismissal, the traceability is, again, it is relaxed because it is not a merits issue. It has to, for purposes of standing, the plaintiff must be given the assumption that he will succeed on the merits. And so, I think that assumption will carry us over the traceability. I'm sorry, Your Honor, I'm out of time, but if there are questions that I... Do you have more that you want to say in response to the question? No. No, Your Honor. Okay. When you come back, we'll put two minutes on the clock. Yes. May I please the Court, Daniel Aguilar for the Small Business Administration. I think we're, it seems like we've been focusing on, like, the certain allegations in the complaint. Just as a bottom line, we think that this Court can and should affirm for the reasons given by the District Court. We agree with the District Court's reasoning, and I think that's borne out both by the case law and the particular allegations made here. So, starting with Stam Standing. So, what the District Court said is that at paragraph 126, it's on ER 216. That's the paragraph where the SBA representative is saying, right, here's the information we need. It's an IRS form that allows us to access your business tax records. It's any update on your business information, if that's changed, and it's some additional letter or statements explaining the request for the loan increase, right? Because first, SBA had approved the loan. It had approved the $4,000 loan and said, you're eligible for that. Stam later then said, I want another loan. SBA said, we have two different loans here. We don't know which one to handle. We're granting the $4,000 one, and as the District Court recognized, I think this is at ER 16, it lists the various places in the complaint where it says these are the complaint's own allegations, that the various plaintiffs, including Stam, made amendments to their original loan applications. Go too far into the merits, though. Whether or not there is a no amendment policy, it seems like that's not a jurisdictional question. That seems like a merits question. I think it goes to sort of Iqbal plausibility standards, right? The claim here is that SBA has a policy of no amendments, but reading the complaint as a whole, and fairly, were plaintiffs themselves. Iqbal has a 12B6 standard. This is 12B1, or this is Article III standing argument, that they had no injury. I think that's very different. I think there's a traceability problem, but I don't think that we could determine at the Article III stage, injury stage, whether or not there was a no amendment policy. Well, I think just taking up this case is a hypothetical, just because somebody comes into the Small Business Administration and says, I'd like a loan. The SBA says, great, can we have some information? And they say no. They say, please give us some information. We can't give you a loan without one, and the person files suit. In that case, I don't think we'd say that, whether you want to think of it as injury or traceability or even remedy, that there's anything really wrong here. The process is to go through and provide the information that the agency's asking for, which is, you want a bigger loan. We need some additional information to process that. There was some conflicting information, because apparently it said immediately that it was denied, so maybe that one email was inviting them to reapply. It was correct, but that could have been a mistake. But I think they get that information. The other plaintiffs amend their complaint to give updates on their citizenship status or immigration status, so we're fairly reading it the whole. And what plaintiffs don't dispute and what the district court recognizes, I think it's at ER 15, is that there's no allegation, and there has been no allegation by plaintiffs in the complaint, district court briefs, or the briefs on appeal, that they ever since requested information to SBA to even try to apply for this loan. And that's where we think the best argument of why CRUISE doesn't apply here. So CRUISE, as I understand it, and forgive me if I'm mischaracterizing it, it's applying for a loan during an election and then challenging certain FEC regulations that exactly govern how that loan works and has to be repaid. So the regulation there is clear, and the court said it's no answer to say that because you apply for that loan, you don't also get to challenge the regulations that govern it. Here, the question is, have you had injury at all? Is this an improper denial of the loan, or as we think, and as the district court said, SBA told you, we need some more information, and you just never provided it? And if it were that simple, maybe, but clearly the injury alleged is that they didn't get a loan, a disaster loan they're entitled to. Well, to be clear, they didn't get the first loan that they applied for, right? SBA did approve the $4,000 loan and gave them an advance on that. And as they allege, paragraphs 118 to 130, multiple SBA subcontractors say, you're fine, you're eligible, we'll input it for you. They even allege that the agents told them, we've confirmed it's inputted, but every time they check, it's not. So how could that not be that at least an allegation, and I love it as a separate point, if you could give me your case that stands for it has to be plausible as to standing under Ninth Circuit law, that it has to be a plausible, so that's my legal question to you, but I don't see how you could say, we're going to resolve whether or not it was them failing to do more, or it was SBA employees, at least their allegation, saying, we won't put it, even though we've told you we've done it. How can they not have alleged that? Well, so I think those paragraphs, read fairly along with paragraph 126, which is what the district court recognized, of saying, right, we're asking for this information, if there are, I don't know, some mechanical or computer set loose, we're trying to resolve them, if everybody's trying to work together, and then 126 SB decides, right, maybe something to put on that computer system, I don't know, here's the exact information that we need, please send it to us. But prior, they allege that prior people said, it's all fine, we've done it for you, and we've confirmed we've done it. And that's true, and they kept asking, and it really is in paragraph 126. Then what about paragraph 130? Right, and so paragraph 130 is two weeks later, again, after no allegation that they've ever submitted this tax information, or reasons for the increase in requests, where SBA says, you haven't responded to us in two weeks, we don't know what to do with this, we're changing it, at this point it's withdrawn. So their whole complaint is 50 plus pages, multiple paragraphs on this, you're saying the district court even lacked authority, because they had no allegation of a case in controversy? Well, because it is a self-inflicted injury that they didn't try to remedy, and if you're asking, oh, sorry, you're right, no, no, go ahead, if you're asking for a Ninth Circuit case on this, I think that's true. That's plausibility, that has to be a plausible allegation of causality. Right, and so I think it is Mendia versus Garcia, right, and that's the case where a person was being held in custody, and the court said, right, you're going to be released on bond now, and they say, no, no, no, I don't want to leave jail, I think the allegation was, I'm concerned about being picked up by immigration enforcement if I leave jail, and then the plaintiff files suit later, saying I've been unlawfully incarcerated for this period of time, and a panel of this court said, well, maybe you have standing as to what the time before the court ordered your release, but your choice, after the court ordered your release, and the government said, right, we will release you to nevertheless stay in jail, is this kind of self-inflicted injury. You don't get to sue over that, and I think the district court's decision is entirely consistent with that underlying logic. I'm happy to keep engaging on standing as well, but otherwise we could turn to the 1611 issue. If I could start that. Oh, sorry, please go ahead. Tell me if you disagree with any of these propositions. 1611, yes. Sorry, I have a hard time pronouncing the acronym. The district court says that applies to corporate plaintiffs. The appellant says it clearly does not. Corporations aren't aliens. Correct me if I'm wrong in your reply brief in support of your 12C motion. You said corporations clearly are not aliens. I can't remember what's in the reply brief, Your Honor, but if you're representing that, I'll go along with that from this part of the case. Okay, and so two questions. Did the district court ever resolve that issue below? And second of all, whether they did or not, yes or no, or is prohibition on federal aid to non-qualified alien-supplied corporations? So I think the question of whether it applies to any corporation that has any ownership interests, however small, by a non-qualified alien is an issue that I understand why you have concerns about it, and it's not one that this court has to resolve here. Well, what's the answer, yes or no? And more importantly, the first question, did the district court ever even respond and resolve the plaintiff's argument? I think what the district court said is this is an easy case for this reason.  are non-qualified aliens, right? That's settled. And then the companies are all wholly owned by the non-qualified aliens. And at that point, it is a reasonable decision by SBA, either in adjudicating the loan applications in the first instance or by working with the standard operating procedure that's been in place since 2018 at least, of saying that these kind of corporations that are wholly owned by non-qualified aliens... What does the district court say? What is the government's representation as to statutory interpretation? Should INA or does it bar corporations that are wholly owned or in large part owned by aliens? Yes or no? What is the government... What's your authority for that? My authority for that is the standard operating procedures, which I think make a reasonable determination that a corporation that's 20% or more owned... Your reliance isn't on the text of the statute or on any case ever interpreting that statute over decades, but it's on SBA's interpretation. So if it is on that... Just to be clear, I'm not basing it solely on that. I think it is to the deluxe of the statute as well. I'm just... I was trying to... You were asking for, like, a reasonable interpretation, so that's... No, I was asking for your best authority, and you jumped to the SOP. I'm happy to jump to the statute itself as well. Has any court ever interpreted the statute in that way? Surprisingly, in my research, I'm not aware of a court... Okay, so just going to your first resort, you said the SOP. Am I correct that, in 2015, the SBA had also made the same determination made in 2018? So, as I recall it, the plaintiffs in the statutory agenda were citing different SOPs. No, that isn't what they're citing. I'm guessing you've prepared this. Is there an SOP in 2015 that's identical to 2018, pre-pandemic? I'm not aware of one. What about the 2011 SOP? So, again, the 2011 SOP, I'm not sure if it's for this economic injury program. It said it in the reply brief, but I'm not sure which one they're referring to. The SBA has... It didn't. Well, our corporations. So, if your position is the poor requires it was the 2011 SOP in violation of federal law. I mean, if it's a background information, and it's trying to apply this, I mean, I can understand how an agency is trying to apply that when it's not in the plain text of the statute. What I am saying here is that it's an easy case because their corporation is wholly owned, and I think I can answer your judge's question this way. If a person were to come up to SBA and say, hi, I would like a loan, and they say, great, are you a small business owner? Yes, I'm in business for myself. Are you a citizen, national, or a qualified alien? No. Well, I have to deny you the loan under 1611. Their personal response, it's okay, I just made it as a corporation for myself. I think it's a reasonable action on behalf of the agency at that point to say I think whether it's the statute or the standard operating procedures or whatever you want to say, I think it is reasonable to say that you are not eligible for this loan. Just factually, the denials here didn't say that. There was no reference to 1611. So the denials said that your loan is denied after they asked for their immigration status, right, which they said that we're immigrants, we have work visas, but not a lawful permanent resident status. And the basis of plaintiff's complaint for their immigration claims, which is at paragraph 140 and 153 of the complaint, is SBA denied our loans because we're businesses owned by non-qualified aliens. And the reasoning for that claim, and it's been their reasoning through this entirely, is that that is ultra-virus because the CARES Act defines eligible entities to simply be businesses under 500 people, and SBA is prohibited from imposing any additional qualifications. I understood opposing counsel today to be walking back from that event and saying that the CARES Act should be understood harmoniously with pre-existing statutes and regulations, including businesses, you know, entirely foreign to the United States. They get denials. They're not told it's 1611. They're never told it's 1611 by SBA until the government in litigation and the district court says, oh, that's what it is, and that's a position you adopt legally in your brief. Brief at page 23. 1611. Bars. Companies in the United States licensed here, in good standing, paying taxes, employing U.S. citizens. The government's position, your position today, is 1611 bars them from receiving disaster relief where your brief says the whole point is to keep Americans employed. That would be a very consequential ruling. Again, we're not asking for a broad sweeping interpretation of law. But that's the brief's position that you took legally. Yes, Your Honor, because this is an easy case because these are companies that are wholly owned by non-qualified aliens. I think one of them only operates two trucks. These are small businesses where the sole owners are people who Congress determined ought not to get federally issued loans. Persons. Persons. Congress's INA statute, unless you can give me a case, said people, asylees, refugees, never been said to be business companies in good standing in the United States. Your Honor, two responses to that. The first is that Congress does not enact self-defeating statutes. And for the hypothetical I gave earlier where every non-qualified alien could simply make a corporation or even a partnership or sole proprietorship, I guess, which has a corporate forum to it, right, and then receive loans that Congress said are not able to go to individuals, I think that that's not a tenable interpretation of the statute. But then I'd also just perhaps... But Canadians, Mexicans, these are beneficial owners. The employees that are getting the aid are U.S. citizens. And then the other point that I would make, Your Honor, is that the broad form of plaintiff's argument, right, which they've consistently pushed in district court and the court here, is that SBA is not allowed to consider any additional qualifications other than what's in the statute. What they're really saying is you might have the authority under the SBA, but you sure have to put it up for notice and comment. You can't just wiggle around with different SOPs. What about saying, oh, U.S. companies that are employed that are owned by previously convicted felons or are owned by veterans that were dishonorably discharged? Can the SBA just announce that with no notice and comment? I think if there is a statute that implements that requirement, I think then a legislative rule is not necessary. And our argument here, and what I think the district court held that is correct, is that 1611, as consistently applied by the SBA in a number of different ways, prohibits wholly owned corporations of nonqualified aliens from receiving federally issued loans. I know of no case where federally issued loans using federal money have been given to nonqualified aliens. They point to the Paycheck Protection Program, but those involve loans that are issued by private lenders using private money. And so I don't think it's the same program that's at issue here. So is this issue even properly before us? Because I understood the argument, as you did, that the CARES Act is a wholly independent statute, and you don't read it behind any background rules of PRIORO or SBA Act. But it seems like it's changing now. Was this fully engaged in the opening brief? I will give you an interpretation of it. I'm not trying to limit this court's consideration of anything. If the court thinks that it's properly before it, my understanding through the litigation until we received the reply brief, was twofold. One is that we can't consider anything that's not in the CARES Act itself defining eligibility standards, because that's how it was litigated. That's how the district court ruled. And two is both on the immigration claims and the complaint, particularly at ER 219-221, and then the arbitrator in Caprice's claim, which is at 224-28, the characterizations there are really that all of this action is ultra vires, because the eligibility criteria are set forth in the CARES Act without additional publication. Okay, three questions. Number one, the government raises this issue of 1611 in the district court. The government raised it affirmatively. The district court neglected to bring it up. Correct me if I'm wrong. Second of all, you say first time you see it is the reply brief, but it's throughout your red brief. I'm sorry. I wasn't talking about 1611. Are corporations aliens under PEMORA? That issue was raised below. It was not answered by the district court. You raised it extensively. What is it that you haven't answered as to that issue in the red brief? I'm sorry, Your Honor. I think what was surprising about the reply brief was trying to draw this clear, bright-line distinction, saying that the corporate form is inherently different from individuals, and therefore 1611 can never apply to anything outside of that. That's odd, particularly because opposing counsel here agrees that we could deny loans to non-qualified alien businesses that are sole proprietorships or partnerships. We don't disagree that in your brief repeatedly, I think I counted page 3, page 21, page 23. You are saying 1611 prohibits because corporations are aliens under INA or PEMORA. What else would you say if the first time you're hearing any of this is in the reply brief? What else would you want to file supplementarily to us? The only distinction that I'm making here, Your Honor, is a bright-line categorical rule that 1611 can never apply to corporate entities that are wholly owned by non-qualified aliens. I don't think that was put into stark relief that plaintiffs were particularly relying upon that until the reply brief. The majority of the discourse, both in the opening brief and in district court and in the complaint, were that SBA cannot consider anything else outside of the CARES Act. And I think that that position is not well taken, particularly because of the 2nd and 11th Circuit decisions we rely on, which says that Congress enacted the CARES Act against the backdrop of pre-existing rules and regulations. But have you engaged on that issue? And have you ever said that any issue here was forfeited? Again, that's what I said. I'm not trying to tell the court what's properly before it or not. No, I'm asking you whether you did, in your brief, allege that they forfeited any issue. No, Your Honor, and I'm not pushing that. Well, I mean, it wasn't raised until the reply brief, so I don't know what opportunity you had to say it was forfeited. I'm sorry. I'm just trying to be descriptive about it. I'm just saying this is very important in other kinds of decisions, even as a result of the reply brief, are you telling us there's an issue of law that we shouldn't reach because it was forfeited? If so, define that issue. I'm not saying that, Your Honor. That's what I thought. I guess my question is, Judging this has asked if you've addressed this issue in your answering brief, and as I read the answering brief, it just is more as a background statement of the law. Did you engage in an actual analysis of whether or not 1611 applies to corporations? No, we thought that that was pretty self-evident in the best reading of the statute, because otherwise individuals could merely take a corporate form and otherwise obtain the funds. We thought that that was common sense in the best interpretation. Just one other point in terms of hurricane and disaster relief, I do understand that that's important. I think it's 1611 defines the federal public benefits to exclude in-term short-term disaster relief. So medicine and supplies getting to people is not considered a federal public benefit. That can't get to non-qualified aliens. That goes out to everybody. Thank you for your argument. Thank you. We'll hear from opposing counsel for two minutes. Thank you, Your Honor. In response to what counsel said, if I may switch my screen just to read from my opening brief page 45-46, and we specifically said, not very outwardly, to accept defendant's approach as reasonable one, one must consider a corporation to be the same as its owner. It is well stated. I have his pages right up on the screen. I've got them right here. Is it 44? 45. 45 and 46. So we definitely, that was the argument below, is that corporate formation has never been disregarded the way counsel is regarding. Now, with our complaint, we list the Small Business Act. We list all the regulations. So that was not only raised below, but it's part of our complaint. And I think it's relevant to think that, to consider that the Small Business Act, what they administered specifically in the Fighting HUBZone small concern, states that such a small concern must be 51% owned by the United States citizen. Now, that is specifically in the Small Business Act. So counsel coming in and pulling out the whole cloth, the whole wholly owned, not so. The last point I want to make is a factual one. PPP is part of the CARES Act. It is not funds from the lenders. It is a PPP, specifically CARES Act provision, which was given to companies even when they didn't have social security number. So that was raised before the court below, and it is part of our complaint. So to say that it is okay to exclude people with pending adjustment-style application with work authorization simply because they are incorporated shareholders, but to grant PPP loans under the CARES Act, or to grant restaurant relief grants under the CARES Act, or to provide credit benefits to people who are non-qualified, would make it totally irrational. Congress knew how to define qualified Indians. They did know how the pre-oral work. They never incorporated, in fact, in the CARES Act, departed from 1641. So if the court has any questions. No, we want to thank you both for your very careful preparation and argument. We'll take this case under advisement, and we'll stand at recess. All rise.
judges: Higginson, CHRISTEN, BUMATAY